UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

FABIO ARGUELLO,                                                              Plaintiff,

v.                                                          Civil Action No. 3:21-cv-159-DJH

LISA LAUTER LIVERS et al.,                                               Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This action arises from Plaintiff Fabio Arguello's arrest and prosecution for charges related to human trafficking.  (Docket No. 1-2, PageID # 10–12; D.N. 9-1, PageID # 53–56) Arguello asserts that neither his arrest nor his prosecution was supported by probable cause, and he sues several individual Louisville Metro Police Department officers and Louisville/Jefferson Metro Government under 42 U.S.C. § 1983 and Kentucky state law.  (*See* D.N. 1-2; D.N. 9-1) Defendants move to dismiss Arguello's complaint.  (D.N. 4)  Arguello moves for leave to file an amended complaint.  (D.N. 9)  After careful consideration, the Court will deny Arguello's motion and grant Defendants' motion.

## I.

The Court "takes the facts only from the complaint, accepting them as true as [it] must do in reviewing a 12(b)(6) motion."  *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020). On February 29, 2020, Defendant LMPD officers[1] Lisa Lauter Livers, Kris Pedigo, and Nick Dilley placed on online advertisement for an escort service as part of a federally funded operation to combat human trafficking.  (D.N. 1-2, PageID # 10; D.N. 9-1, PageID # 53)  The advertisement did not mention the age of the "escort," who was actually an undercover LMPD officer.  (D.N.

_____

[1] Arguello also sues "Unknown Police Officers."  (*See* D.N. 1-2, PageID # 8)

1

1-2, PageID # 10; D.N. 9-1, PageID # 53)  Arguello responded to the advertisement and engaged in sexual text messaging with the undercover officer.  (D.N. 1-2, PageID # 10; D.N. 9-1, PageID # 53; *see* D.N. 11-1)  After discussing the cost of sexual services, Arguello requested the undercover officer's hotel address.  (*See* D.N. 1-2, PageID # 10; D.N. 9-1, PageID # 53; D.N. 11-1, PageID # 75)

The undercover officer then asked Arguello how old he was and told him that she was sixteen years old.  (D.N. 11-1, PageID # 75; *see* D.N. 1-2, PageID # 10; D.N. 9-1, PageID # 54)  Arguello responded, "16 you are not legal age yet" and "Is this a joke[?]"  (D.N. 11-1, PageID # 75)  He ceased sending sexual text messages but again requested her address and room number, stating, "I have to see you to believe it[.]"  (*Id.*, PageID # 75–76; *see* D.N. 1-2, PageID # 10–11; D.N. 9-1, PageID # 54)  He then drove to the hotel where she was staying.  (*See* D.N. 1-2, PageID # 10–11; D.N. 9-1, PageID # 54; D.N. 11-1, PageID # 75–76)  As Arguello approached the hotel room, the individual Defendants grabbed him and threw him into the room.  (D.N. 1-2, PageID # 11; D.N. 9-1, PageID # 54)  Upon questioning by the officers, Arguello told them that he "was approaching the hotel room to see if the fictitious girl needed help."  (D.N. 1-2, PageID # 11; *see* D.N. 9-1, PageID # 54)  The individual Defendants arrested Arguello and charged him with promoting human trafficking and "unlawful use of electronic means" to "induce a minor to engage in sexual or other prohibited activities" under Ky. Rev. Stat. §§ 529.110[2] and 510.155.[3]

---

[2] Kentucky Revised Statute § 529.110(1) provides that a person promotes human trafficking when the person "intentionally":

(a) Benefits financially or receives anything of value from knowing participation in human trafficking; or (b) Recruits, entices, harbors, transports, provides, or obtains by any means, or attempts to recruit, entice, harbor, transport, provide, or obtain by any means, another person, knowing that the person will be subject to human trafficking.  Ky. Rev. Stat. § 529.110(1).

[3] Kentucky law prohibits "knowingly" using "a communications system" for the purpose of "procuring or promoting the use of a minor, including a peace officer . . . posing as a minor if the

(D.N. 1-2, PageID # 11; D.N. 9-1, PageID # 54)  After the arrest, Pedigo held a press conference and stated that the undercover operation was "successful," citing the "seven phenomenal arrests" made by the LMPD officers.  (D.N. 1-2, PageID # 11–12; D.N. 9-1, PageID # 54–55)  Pedigo also said that he "want[ed] to get a lot of arrests to show" his supervisor that she "picked the right guy for the job."  (D.N. 1-2, PageID # 11; D.N. 9-1, PageID # 55)

On September 1, 2020, Livers testified at a probable-cause hearing and stated that "age was not mentioned during the sexual text message exchange."  (D.N. 9-1, PageID # 55)  A state-court judge dismissed the charges against Arguello without prejudice, determining that the charges were not supported by probable cause because "all of the agreements to obtain something happened well before there[] [was] anything about age."  (D.N. 1-2, PageID # 12; D.N. 9-1, PageID # 56)  On February 22, 2021, the Commonwealth's Attorney indicted Arguello on the same charges the state-court judge previously dismissed.  (D.N. 1-2, PageID # 12; D.N. 9-1, PageID # 56)  Livers's grand-jury testimony on those charges "conflict[ed]" with the testimony she gave in the probable-cause hearing.  (D.N. 9-1, PageID # 56)

Arguello initiated this action in state court, claiming several violations of state and federal law by the individual LMPD officers, including (1) false arrest/false imprisonment; (2) unreasonable seizure; (3) official misconduct; (4) assault and battery; (5) intentional infliction of emotional distress/outrageous conduct; and (6) malicious prosecution.  (*See* D.N. 1-2; D.N. 9-1) Arguello also asserts municipal liability against Metro.  (*See* D.N. 1-2; D.N. 9-1)  Defendants removed the action to this Court (D.N. 1) and now move to dismiss.  (D.N. 4)  In response,

---

person believes that the peace officer . . . is a minor" for human trafficking that involves "commercial activity."  Ky. Rev. Stat. § 510.155(1)(a); *see* Ky. Rev. Stat. § 529.100(1)(b).

Arguello moves for leave to amend his complaint.  (D.N. 9)  Defendants oppose Arguello's motion, arguing that amendment would be futile.  (D.N. 12)

## II.

When both a motion to dismiss and a motion to amend the complaint are pending, the Court must first address the motion to amend.  *See Simpson v. Louisville Metro Gov't*, No. 3:19-CV-629, 2021 WL 4097310, at *2 (W.D. Ky. Sept. 8, 2021) (quoting *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 3:08-CV-459, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010)). Federal Rule of Civil Procedure 15(a)(2) contemplates a lenient standard of review when a party moves to amend a pleading.  *See* Fed. R. Civ. P. 15(a)(2).  The Rule provides that "[t]he court should freely give leave when justice so requires."  *Id.*  "But a court may deny a motion to amend a complaint when the amendment would be futile."  *Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021).  A proposed amendment is futile if it could not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

The amended complaint therefore "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This plausibility standard requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" fails to show that the plaintiff "is

4

entitled to relief," Fed. R. Civ. P. 8(a)(2), and thus will not withstand a motion to dismiss. *Iqbal*, 556 U.S. at 679.

## A.      Motion to Amend

Arguello moves to amend his complaint in light of "newly discovered evidence." (D.N. 9, PageID # 50) Specifically, his proposed amended complaint describes Livers's testimonies at the probable-cause and grand-jury proceedings in greater detail (D.N. 9-1, PageID # 55–56), and according to Arguello, shows that Livers lied to secure an indictment against him. (D.N. 16, PageID # 94–95) Defendants maintain that Arguello's proposed amendment would be futile. (D.N. 12, PageID # 78–79)

In his proposed amended complaint, Arguello asserts a claim of malicious prosecution against the individual Defendants. (D.N. 9-1, PageID # 60–61) Arguello does not specify whether he brings his malicious-prosecution claim under Kentucky or federal law. (*See* D.N. 9-1) Under Kentucky law, a plaintiff states a malicious-prosecution claim by plausibly alleging that

> 1) the defendant[s] initiated, continued, or procured a criminal or civil judicial proceeding . . . ; 2) the defendant[s] acted without probable cause; 3) the defendant[s] acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . . ; 4) the proceeding . . . terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016), as corrected (Sept. 22, 2016).

A malicious-prosecution claim under § 1983 requires a similar showing. *See Ward v. Borders*, No. 3:16-CV-393-RGJ-RSE, 2021 WL 4487605, at *8 (W.D. Ky. Sept. 30, 2021) (citing *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010)). To assert a malicious-prosecution claim under § 1983, a plaintiff must allege that (1) "a criminal prosecution was initiated against the plaintiff" and the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute";

5

(2) "there was a lack of probable cause for the criminal prosecution"; (3) "'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' . . . apart from the initial seizure"; and (4) the criminal proceeding "resolved in the plaintiff's favor." *Sykes*, 625 F.3d at 308–09 (internal citations and quotation marks omitted). Unlike the state-law claim, a malicious-prosecution claim under § 1983 need not allege malice. *See Ward*, 2021 WL 4487605, at *8 (citing *Sykes*, 625 F.3d at 309).

Arguello's proposed amended complaint asserts that during the probable-cause hearing, Livers testified that the LMPD officers "did not mention the age of the undercover officer in the online adult advertisement because they 'cannot post an ad that says minor'" and that "age was not mentioned during the sexual text message exchange." (D.N. 9-1, PageID # 55) Based on this testimony, the state-court judge found that Arguello's charges were not supported by probable cause. (*Id.*, PageID # 56) Arguello further alleges that the Commonwealth's Attorney then "presented the case to the grand jury" and that Livers's testimony in that proceeding "conflict[ed] [with] the sworn testimony given in the probable cause hearing." (*Id.*) In support of his motion to amend and with permission from the state court (*see* D.N. 15-1), Arguello submits an audio recording of Livers's testimony from the probable-cause and grand-jury proceedings. (*See* D.N. 18)

Arguello does not assert, however, that his criminal case has "resolved in [his] favor," which must be alleged to state a malicious-prosecution claim under Kentucky and federal laws. *Sykes*, 625 F.3d at 309 (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.")); *see Martin*, 507 S.W.3d at 11–12. Arguello's motion to

amend will therefore be denied as futile.[4]  *See MPawinayo v. Rothwell*, No. 3:21-CV-00915, 2022 WL 452471, at *7 (M.D. Tenn. Feb. 14, 2022) (dismissing plaintiff's malicious-prosecution claim when his state-court criminal case was "still pending" (citing *McDonough v. Smith*, 139 S. Ct. 2149, 2159 (2019)); *see also King v. Harwood*, 852 F.3d 568 (6th Cir. 2017) ("[A] malicious-prosecution claim is not available before the favorable termination of criminal proceedings, nor does the limitations period for such a claim begin until the favorable termination of criminal proceedings." (citing *Heck*, 512 U.S. 477)).

**B.      Motion to Dismiss**

As previously discussed, Arguello must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  For the reasons explained below, Arguello has failed to plausibly allege that the LMPD officers lacked probable cause to arrest him.  (*See* D.N. 1-2)  Further, because Arguello has not alleged a constitutional violation, his municipal-liability claim will also fail.  *See Griffith*, 975 F.3d at 581.

**1.      Claims Against Individual Defendants**

**a.      False Arrest/False Imprisonment**

Arguello asserts a false-arrest/false-imprisonment[5] claim under 42 U.S.C. § 1983 against the individual Defendants.  (D.N. 1-2, PageID # 15)  To state a false-arrest claim, Arguello must

---

[4] In his amended complaint, Arguello also adds an allegation to his municipal-liability claim that Metro "had official policies and customs in place, including but not limited to, having a policy to alter testimony between the probable cause hearing and grand jury testimony in order to receive an indictment."  (D.N. 9-1, PageID # 58)  As explained below, however, this assertion does not rescue his municipal-liability claim because Arguello fails to allege a constitutional violation in either his original or his amended complaint.  *See Griffith v. Franklin Cnty.*, 975 F.3d 554, 581 (6th Cir. 2020).

[5] Arguello claims "false arrest/false imprisonment."  (D.N. 1-2, PageID # 15)  The Supreme Court has noted that false-arrest and false-imprisonment claims under § 1983 "overlap," as false arrest

plausibly allege that his arrest "was unsupported by probable cause." *See Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015). "An officer possesses probable cause when, at the moment the officer seeks the arrest, 'the facts and circumstances within [the officer's] knowledge and of which [she] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Id.* (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The "probable cause determination is based on the 'totality of the circumstances,'" and courts "must take account of 'both the inculpatory *and* exculpatory evidence.'" *Id.* (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense," the officer "may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Arguello asserts that he was arrested upon his arrival at the hotel without probable cause. (D.N. 1-2, PageID # 15) The individual Defendants disagree, arguing that they had probable cause to arrest Arguello. (D.N.4-1, PageID # 28–29) To support this contention, these defendants point to the text messages that Arguello sent to the undercover officer, which they attach as an exhibit. (*See* D.N. 11-1) "When a document is mentioned in the complaint and is a necessary part of the plaintiff['s] claim, the defendant may submit a copy of the document to the court attached to a motion to dismiss." *Smith v. Westlake Vinyls, Inc.*, 403 F. Supp. 3d 625, 631 (W.D.

---

is a "species" of false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The Court will therefore analyze Arguello's "false arrest/false imprisonment" claim as a single claim, recognizing that Arguello does not differentiate between the claims (*see* D.N. 1-2) and that false-arrest and false-imprisonment claims are "virtually synonymous." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 n.2 (2019); *see Saltmarshall v. Prime Healthcare Servs.-Garden City LLC*, 831 F. App'x 764, 768 (6th Cir. 2020) (treating plaintiff's false-arrest and false-imprisonment claims "as one" because "false arrest is a subspecies of false imprisonment" (citing *Wallace*, 549 U.S. at 388–89)).

Ky. 2019) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)).   Arguello

does not object to the Court's consideration of Defendants' exhibit and relies on the text messages

to support his claims, quoting them in his complaint. (*See* D.N. 1-2, PageID # 10; *see also* D.N.

8)  The text-message exchange therefore plays a "necessary" role in his complaint, *Smith*, 403 F.

Supp. 3d at 631, and the Court will consider the exhibit in deciding Defendants' motion.  *See*

*Marvaso v. Sanchez*, 971 F.3d 599, 608 n.2 (6th Cir. 2020) (considering defendant's warrant

affidavit in deciding 12(b)(6) motion when plaintiff alleged unconstitutional search and seizure

under § 1983); *Battle v. Parr*, No. 3:17-CV-500-DJH, 2018 WL 4558200, at *3 (W.D. Ky. Sept.

21, 2018) (considering exhibits attached to motion to dismiss that were part of plaintiff's

underlying criminal case and "central" to her false-arrest claim (citing *Harris v.*

*Louisville-Jefferson Cnty. Metro Gov't*, No. 3:11-CV-338-H, 2012 WL 777263, at *2 (W.D. Ky.

Mar. 8, 2012) (considering exhibits, which were from plaintiff's underlying criminal action,

submitted by defendant when deciding a motion to dismiss and noting that the underlying state

criminal case "[wa]s certainly 'central' to [p]laintiff's [§ 1983] claims"))).

The text messages show, and Arguello does not dispute, that Arguello responded to an

escort advertisement and discussed payment in exchange for sexual activity.  (D.N. 1-2, PageID

# 10; D.N. 11-1, PageID # 75)  After Arguello requested the hotel address, the undercover officer

asked Arguello his age.  (D.N. 11-1, PageID # 75)  Arguello responded that he was thirty-five

years old and asked the undercover officer her age.  (*Id.*)  She replied, "[I']m 16[.]"  (*Id.*)  Arguello

then said, "16 you are not legal age yet" and "Is this a joke[?]"  (*Id.*)  The undercover officer

stated that she was not joking.  (*Id.*)  Arguello asked how she was able to "ge[t]" a hotel room if

she was sixteen years old, and the undercover officer replied that her sister "got" the hotel room

for her.  (*Id.*, PageID # 75–76)  Arguello then stated, "I have to see you to believe it" and again

requested her address and room number.  (*Id.*, PageID # 76)  Notably, this exchange as detailed in the exhibit does not materially contradict the facts alleged in Arguello's complaint.  (*See* D.N. 1-2; D.N. 11-1)

Upon his arrival at the hotel, LMPD officers arrested Arguello and ultimately charged him with promoting human trafficking and inducing a minor to engage in sexual activities in violation of Ky. Rev. Stat. §§ 529.110 and 510.155.  (D.N. 9-1, PageID # 54)  The parties dispute whether, based on these facts, Arguello has plausibly alleged that the LMPD lacked probable cause to arrest him.  (*See* D.N. 4-1, PageID # 28–29; D.N. 8, PageID # 45)  As previously discussed, the Fourth Amendment is not violated if "an officer has probable cause to believe that an individual has committed" any criminal offense, *Atwater*, 532 U.S. at 354, and Kentucky law prohibits "intentionally subject[ing]" a minor "to engage in . . . [c]ommercial sexual activity." Ky. Rev. Stat. § 529.100(1)(b); *see* §§ 510.155, 529.110.  Kentucky law also criminalizes "agree[ing]" to "engage in sexual conduct with another person in return for a fee."  Ky. Rev. Stat. § 529.020.

Considering "the facts and circumstances within [the officers'] knowledge" at the time of his arrest, as stated in the complaint, Arguello has not plausibly alleged that the officers lacked probable cause to arrest him under one or more of the laws cited above. *Wesley*, 779 F.3d at 429; *see, e.g.*, §§ 510.155, 529.020, 529.100, 529.110.  The complaint alleges that Arguello responded to an advertisement for escort services and that after "sexual text messaging," the "escort" told Arguello that she was sixteen years old.  (D.N. 1-2, PageID # 10)  Arguello then proceeded to the "escort['s]" hotel room.  (*Id.*, PageID # 11)  Under these facts, the complaint supports a finding of probable cause. *See Topa v. Kerbs*, No. 218-CV-475-FTM-38MRM, 2019 WL 527968, at *2 (M.D. Fla. Feb. 11, 2019), *aff'd*, 774 F. App'x 606 (11th Cir. 2019) (dismissing plaintiff's

10

false-arrest claim under Rule 12(b)(6) when he admitted that he "gave [the undercover officer] the impression [that he was] interested" in commercial sexual services and was then arrested for solicitation); *Hochstein v. Demings*, No. 615-CV-1845-ORL-41GJK, 2016 WL 9725408, at *4 (M.D. Fla. Oct. 27, 2016) (granting defendant's 12(b)(6) motion on plaintiff's false-arrest claim when plaintiff, whose charges were ultimately dropped, alleged that he communicated with an undercover officer about commercial sexual acts, the officer mentioned the participant was fourteen years old, and the plaintiff ceased communicating sexually but still traveled to meet the undercover officer); *cf. Wesley*, 779 F.3d at 429–30 (finding plaintiff plausibly alleged false arrest when his arrest was based solely on a child's "uncorroborated" and "inconsistent" allegations of wrongdoing).  Arguello therefore has not plausibly alleged false arrest, and the Court will grant Defendants' motion as to Arguello's "false arrest/false imprisonment" claim.  *See Wesley*, 779 F.3d at 428–30.

### b.    Unreasonable Seizure

Arguello also asserts unreasonable seizure under § 1983.  (D.N. 1-2, PageID # 12–13) "'The Fourth Amendment requires probable cause for searches and seizures,' . . . including warrantless arrests." *Davis v. Butler Cnty.*, 658 F. App'x 208, 214 (6th Cir. 2016) (quoting *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006)) (citing *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007)).  As previously discussed, Arguello has failed to state a false-arrest claim because he does not sufficiently allege that the individual Defendants lacked probable cause to arrest him. *See Wesley*, 779 F.3d at 429.  For the same reason, Arguello fails to plausibly allege unreasonable seizure, and the Court will therefore grant Defendants' motion as to this claim.  *See Alman v. Reed*, 703 F.3d 887, 896 (6th Cir. 2013) ("The Fourth Amendment prohibits unreasonable searches and seizures, including arrests, but 'a warrantless arrest by a law officer is reasonable

under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.'" (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004))).

### c.    Official Misconduct

Arguello claims that he is entitled to damages pursuant to Ky. Rev. Stat. § 446.070 because the individual Defendants engaged in official misconduct, in violation of Ky. Rev. Stat. § 522.020.  (D.N. 1-2, PageID # 15–16)  Section 446.070 permits a "person injured by the violation of any statute" to "recover from the offender such damages as he sustained by reason of the violation."  Ky. Rev. Stat. § 446.070.  Arguello asserts that these defendants violated § 522.020 (D.N. 1-2, PageID # 15–16), which states that a "public official" is guilty of official misconduct when the official "knowingly"

> (a) [c]ommits an act relating to his office which constitutes an unauthorized exercise of his official functions; or (b) [r]efrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or (c) [v]iolates any statute or lawfully adopted rule or regulation relating to his office.

Ky. Rev. Stat. § 522.020.

Arguello bases his official-misconduct claim on his arrest by the LMPD officers, stating that they "intended to make an arrest for human trafficking even if [Arguello] had no intent to engage in human trafficking."  (D.N. 1-2, PageID # 15)  But as previously discussed, Arguello has neither plausibly alleged that his arrest was unsupported by probable cause nor asserted that the individual Defendants otherwise violated § 522.020.  *See Wesley*, 779 F.3d at 429.  Accordingly, the Court will grant Defendants' motion as to Arguello's official-misconduct claim.  *See Iqbal*, 556 U.S. at 678.

### d.    Assault and Battery

Arguello's assault and battery claims fail for the same reason.  (*See* D.N. 1-2, PageID # 17)  Under Kentucky law, assault and battery are two distinct claims.  *See Hart ex. rel Dillon v.*

12

*Lawson*, No. CV 6:20-147-JMH, 2021 WL 3713052, at \*3 (E.D. Ky. Aug. 19, 2021).  Assault "requires the threat of unwanted touching of" an individual, "while battery requires an actual unwanted touching."  *Cleveland v. Louisville Metro Gov't*, No. 3:16-CV-588-CRS, 2019 WL 1058154, at \*10 (W.D. Ky. Mar. 6, 2019) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001)) (internal quotation marks omitted).

Arguello claims assault and battery based on his arrest, asserting that the individual Defendants "had physical contact with [him], which was intentional, unauthorized, and offensive" and "intentionally placed [him] in imminent fear of bodily injury."  (D.N. 1-2, PageID # 17) "Under Kentucky law, an 'officer making an arrest may use such force as may be necessary to make the arrest but no more.'"  *Hartman v. Thompson*, 931 F.3d 471, 486 (6th Cir. 2019) (quoting *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973)).  As previously discussed, Arguello has not plausibly alleged that the officers lacked probable cause to arrest him.  *See Wesley*, 779 F.3d at 429.  Moreover, Arguello does not allege any facts suggesting that these defendants used excessive force in arresting him.  (*See* D.N. 1-2)  The Court will therefore grant Defendants' motion to dismiss as to these claims.  *See Iqbal*, 556 U.S. at 678.

### e.     Intentional Infliction of Emotional Distress/Outrageous Conduct

Arguello claims intentional infliction of emotional distress/outrageous conduct under state law.  (D.N 1-2, PageID # 17)  Under Kentucky law, intentional infliction of emotional distress is "also referred to as outrageous conduct."  *Mills v. Louisville Metro. Gov't*, No. 3:17-CV-552-CHB, 2019 WL 1427553, at \*7 (W.D. Ky. Mar. 30, 2019).  To assert outrageous conduct, Arguello must plausibly allege that the individual Defendants' "conduct [w]as . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Marshall v. Rawlings*

*Co. LLC*, 854 F.3d 368, 385 (6th Cir. 2017) (quoting *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 407 (6th Cir. 1997)) (internal quotation marks omitted).

As with his other state-law claims, Arguello relies on his arrest to support his IIED/outrageous-conduct claim, alleging that the LMPD officers' "conduct as described exceeded all reasonable bounds of decency and was extreme, outrageous, and utterly intolerable." (D.N. 1-2, PageID # 17)  But as explained above, Arguello has neither sufficiently alleged that his arrest was unsupported by probable cause, *see Wesley*, 779 F.3d at 429, nor asserted any other facts that support his IIED/outrageous-conduct claim.  (*See* D.N. 1-2)  Defendants' motion will therefore be granted as to this claim.  *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 452 (6th Cir. 2007) (upholding dismissal of IIED/outrageous-conduct claim when plaintiff's arrest was supported by probable cause, noting that such a claim "would seem very difficult [to assert] absent additional allegations of outrageous behavior"); *Willis v. Neal*, 247 F. App'x 738, 744 (6th Cir. 2007) (affirming dismissal of IIED/outrageous-conduct claim when plaintiff's arrest was supported by probable cause).

## 2.    Municipal Liability

Arguello brings a municipal-liability claim under § 1983 against Metro, asserting that Metro "approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of the [LMPD] police officers" and "encourag[ed] and/or tacitly sanction[ed] the violation of individual rights." (D.N. 1-2, PageID # 14)  Arguello contends that Metro's "wrongful practices, policies, customs and/or usages" led to his arrest and "subjected [him] to false and malicious charges," in violation of the Fourth Amendment.  (*Id.*)

Municipal liability "attaches only under a narrow set of circumstances."  *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 690 (1978)).  A municipality may not be held liable under § 1983 "*solely* because it employs a tortfeasor." *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691).  Rather, a plaintiff asserting a municipal-liability claim must "show that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" *Jackson*, 925 F.3d at 828 (quoting *Alman*, 703 F.3d at 903).

A plaintiff may do so in one of four ways.  *See Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020).  The plaintiff must plausibly allege either "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (quoting *Jackson*, 925 F.3d at 828) (internal quotation marks omitted).  Arguello does not specify which theory or theories make his municipal-liability claim cognizable.  (*See* D.N.1-2)  But more importantly, under any theory of municipal liability, Arguello must plausibly allege "an underlying constitutional violation." *Griffith*, 975 F.3d at 581 (citing *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019) ("[W]here there has been no showing of individual constitutional violations . . . there can be no municipal liability.")).  Because Arguello does not allege an underlying constitutional violation, his municipality-liability claim must also fail. *See id.*; *Duren v. Byrd*, No. 1:18-CV-00084, 2021 WL 3848105, at *24 (M.D. Tenn. Aug. 26, 2021) (dismissing plaintiff's municipal-liability claim when he failed to allege a constitutional violation (citing *Nichols v. Wayne Cnty.*, 822 F. App'x 445, 449 (6th Cir. 2020) ("[T]o prevail in a § 1983 suit against municipal defendants, [a plaintiff] must still allege, and ultimately prove, a constitutional violation: 'if the plaintiff has suffered no constitutional injury, his *Monell* claim fails.'" (quoting *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 389 (6th Cir. 2018)))).

## III.

Arguello does not plausibly allege malicious prosecution in his proposed amended complaint. (*See* D.N. 9-1)  Additionally, he has failed to sufficiently assert that the individual Defendants arrested him without probable cause. (*See* D.N. 1-2)  For these reasons, he also cannot plausibly allege municipal liability.  *See Griffith*, 975 F.3d at 581.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Arguello's motion to amend (D.N. 9) is **DENIED**.

(2)    Defendants' motion to dismiss (D.N. 4) is **GRANTED**.   This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

March 15, 2022

David J. Hale, Judge
United States District Court

16